IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHYDON M. STAPLETON,                           Case No. 3:13-cv-01452-AA
                                                    OPINION AND ORDER
                Plaintiff,

        v.

CAROLYN W. COLVIN,
Commissioner of Social
Security,

                Defendant.
_____

Lisa R. J. Porter
KP Law P.C.
5200 S.W. Meadows Road, Suite 150
Lake Oswego, Oregon 97035
        Attorney for plaintiff

S. Amanda Marshall
United States Attorney
Adrian L. Brown
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97201

Carol A. Hoch
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 901
Seattle, Washington 98104

Jeffrey R. McClain
Richard Rodriguez
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104
        Attorneys for defendant

Page 1 - OPINION AND ORDER

AIKEN, Chief Judge:

Plaintiff Shydon Stapleton brings this action pursuant to the Social Security Act ("Act") to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's application for Title XVI supplemental security income ("SSI") under the Act. For the reasons set forth below, the Commissioner's decision is affirmed and this case is dismissed.

## PROCEDURAL BACKGROUND

On December 1, 2009, plaintiff applied for SSI. Tr. 18, 196-202. Her application was denied initially and upon reconsideration. Tr. 117-29. On August 3, 2011, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did Dolene Tharp-Britt, a third-party witness. Tr. 62-114. That same day, the ALJ ordered two consultive examinations due to the lack of relevant medical evidence concerning plaintiff's functional limitations.[1] Tr. 111. Accordingly, plaintiff underwent physical and mental evaluations by James Harris, M.D., and Gregory Cole, Ph.D., respectively, in January 2012. Tr. 601-25. On April 16, 2012, a second ALJ hearing was held, wherein plaintiff was again represented by counsel and testified, as did her boyfriend, Bow Quinton Tucker, and a vocational expert ("VE"). Tr. 33-61. On May 21, 2012, the ALJ

---

[1] Plaintiff was smoking methamphetamine and abusing prescription drugs from March 2009 through January 2011. Tr. 86, 94. Accordingly, at the time of the first ALJ hearing, the record contained no contemporaneous medical opinion evidence concerning plaintiff's functional abilities while sober. Tr. 99-104, 196.

Page 2 - OPINION AND ORDER

issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 18-27. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1-3.

## STATEMENT OF FACTS

Born on June 30, 1979, plaintiff was 30 years old on the alleged onset date of disability and 32 years old at the time of the second hearing. Tr. 26, 196. Plaintiff did not graduate from high school, although she later obtained a GED and certification in veterinary assistance. Tr. 26, 217. She was previously employed as a fast food worker, cashier, cleaner, flagger, and veterinary assistant. Tr. 54-55, 218. Plaintiff alleges disability as of September 3, 2009, due to "HIV, fibromyalgia, pain, [and] asthma." Tr. 216.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. Burch v. Barnhart, 400

F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140; 20 C.F.R. § 416.920(b). If so, the claimant is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 416.920(c). If the claimant does not have a severe impairment, she is not disabled.

At step three, the Commissioner considers whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 416.920(d). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. § 416.920(f). If the claimant can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must demonstrate that the claimant can perform other work that exists in significant numbers in the national and local economy. Yuckert, 482 U.S. at 141-42; 20 C.F.R. § 416.920(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 416.966.

### THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process outlined above, the ALJ found that plaintiff had "not engaged in substantial gainful activity since December 1, 2009, the application date." Tr. 20. At step two, the ALJ determined that plaintiff had the following severe impairments: "methamphetamine dependence in early remission, cannabis dependence in early remission, prescriptive opiate abuse in remission, anxiety disorder, major depression, pain disorder associated with a psychological factor and general medical condition, HIV (asymptomatic) and fibromyalgia." Id. At step three, the ALJ found that plaintiff's impairments, either alone or in combination, did not meet or equal the requirements of a listed impairment. Id.

Because she did not establish disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff had the residual functional capacity ("RFC") to perform a modified range of light

Page 5 - OPINION AND ORDER

work:

> [she has] the capacity to sit up to 8 hours in a workday,
> and stand or walk up to 5 hours in a workday. She should
> not be required to climb other than stairs and ramps
> occasionally. She can occasionally engage in tasks
> requiring stooping, kneeling, crouching or crawling. She
> should avoid concentrated exposure to hazards in the
> workplace, such as dangerous machinery. She would work
> best in a simple, routine work environment not requiring
> public contact.

Tr. 22.

At step four, the ALJ found that plaintiff could not perform her past relevant work. Tr. 26. At step five, the ALJ determined that jobs existed in significant numbers in the national and local economy that plaintiff could perform despite her impairments, such as extruder machine operator, hand packager, and small products assembler. Tr. 27. As such, the ALJ concluded that plaintiff was not disabled under the Act. Id.

### DISCUSSION

Plaintiff argues that the ALJ erred by: (1) improperly assessing the medical opinion evidence; (2) rejecting the lay witness testimony; and (3) failing to account for all of her limitations in the RFC, such that the step five finding was invalid.

I.   Medical Opinion Evidence

Plaintiff first contends that the ALJ "failed to discuss in toto medical evidence from [her] treating medical doctors who overwhelmingly and consistently described years of chronic pain and fatigue." Pl.'s Opening Br. 22. As a preliminary matter, the Court finds this allegation of error deficient in two critical respects.

Page 6 - OPINION AND ORDER

First, plaintiff neglected to identify the name of a single medical provider, or cite to any opinion evidence, that was allegedly wrongfully rejected. See Pl.'s Opening Br. 22-24; see also Davis v. Colvin, 2014 WL 2611346, *3 n.2 (D.Or. June 11, 2014) (court "declin[ing] to further address" the ALJ's assessment of the medical evidence or lay witness statements where the claimant "neglected to identify the name of any third party or medical source, or cite to the opinion evidence that was allegedly wrongfully rejected") (citing Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008)).

Second, plaintiff mischaracterizes both the record and the ALJ's decision. Notably, plaintiff did not receive treatment from any doctor or other acceptable medical source. Her conditions were instead managed by Linda Bird or Maria Kosmetatos, both nurse practitioners, and Tom Bender, a licensed counselor. Plaintiff, however, largely stopped seeing these providers once she stopped using drugs. See Tr. 460-72, 631-41. In any event, contrary to plaintiff's assertion, the ALJ expressly addressed the opinions of Ms. Bird, Ms. Kosmetatos, and Mr. Bender. See Tr. 23. Moreover, the Commissioner raised the aforementioned shortcomings, but plaintiff elected not to clarify or otherwise discuss these matters in her reply brief. Compare Def.'s Resp. Br. 6-8, with Pl.'s Reply Br. 1-5. For these reasons, the Court finds that plaintiff failed to carry her burden, such that the ALJ's assessment of the medical evidence is affirmed.

Nonetheless, even assuming that plaintiff adequately raised

this issue, the ALJ did not commit reversible error. While only "acceptable medical sources" can diagnose and establish that a medical impairment exists, evidence from "other sources" can be used to determine the severity of that impairment and how it affects the claimant's ability to work. 20 C.F.R. § 416.913(a), (d). "Other sources" include, but are not limited to, nurse practitioners and counselors. 20 C.F.R. § 416.913(d); SSR 06-03p, available at 2006 WL 2329939. To disregard the opinion of an other, or lay, source, the ALJ need only provide a reason that is "arguably germane" to that witness. Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001); Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1223-24 (9th Cir. 2010). In rejecting such statements, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis . . . if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012) (citations omitted).

Between December 2008 and August 2011, plaintiff received treatment from Ms. Bird, approximately one time per month, for fibromyalgia, medication management, and/or intermittent health concerns. See Tr. 359-83, 460-569. In May 2010, Ms. Bird wrote a letter on behalf of plaintiff's SSI application, in which she diagnosed plaintiff with HIV, "[c]hronic neck pain (secondary to motor vehicle accidents in the past)," asthma, allergies, fibromyalgia, and "[d]epression (diagnosed in April 2010 and most

likely secondary to her chronic pain issues)." Tr. 579. Ms. Bird opined that plaintiff was not "suitable for employment in a physically demanding profession" due to her "very limited stamina and weakness." Id. Ms. Bird also stated that she "doubt[ed] [plaintiff] will be able to return to full employment in the foreseeable future" in light of "her in ability to focus and attend tasks." Id.

In July 2010, Ms. Kosmetatos completed a check-the-box form prepared by plaintiff's attorney. Tr. 440-47. Ms. Kosmetatos reported that she had overseen plaintiff's HIV and provided treatment for "1 year, every 1-2 months." Tr. 441. Generally, she checked boxes reflecting that plaintiff was severely restricted in her physical and mental functioning. Tr. 441-47. Ms. Kosmetatos's opinion was based on plaintiff's self-reports and she denied that plaintiff was using or abusing substances. Tr. 444-47.

In November 2011, Mr. Bender filled out a similar check-the-box form. Tr. 431-38. He remarked that plaintiff would be unable to "maintain a job for 40 hours a week" due to her "depression and pain/struggles." Tr. 435, 437. Mr. Bender assigned plaintiff a "[t]ypical" GAF score of 62, reflecting mild impairment, although her score dropped as low as 55 in the past year, indicating moderate impairment. Tr. 431. Like Ms. Kosmetatos, Mr. Bender explicitly denied the presence of substance abuse. Tr. 438. Outside of these forms, the record does not contain any treatment notes or other evidence from Ms. Kosmetatos and Mr. Bender, and plaintiff's hearing testimony revealed that she had not obtained care from

Page 9 - OPINION AND ORDER

either source since she stopped abusing drugs. Tr. 98-101, 104, 109-10.

The ALJ discredited the opinions of Ms. Bird, Ms. Kosmetatos, and Mr. Bender because they "were not aware of [plaintiff's] drug use." Tr. 23. Additionally, the ALJ afforded little weight to Ms. Kosmetatos's report because she "treats [plaintiff] primarily for her HIV condition; however, much of [the] assessment takes into consideration certain mental health impairments . . . For example, Ms. Kosmetatos provided for limitations relating to [plaintiff's] poor memory, but there is no evidence of any cognitive testing." Id. The ALJ also rejected Mr. Bender's evaluation because he "opined [plaintiff] is likely impaired from holding down sustained, gainful employment due to a combination of mental and physical impairments [but there] is no evidence Mr. Bender ever performed a physical examination and based on title alone, he would not be qualified to perform such an examination." Id. In other words, the ALJ disregarded the opinions of Ms. Kosmetatos and Mr. Bender to the extent they were uncorroborated by independent objective medical evidence and instead premised on plaintiff's uncredible statements.

An ALJ need not accept a medical opinion that fails to take into account a claimant's drug or alcohol use. See Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 602-03 (9th Cir. 1999); see also Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001) (claimant's provision of misinformation, unbeknownst to a doctor, served as a legally sufficient reason for rejecting that doctor's

opinion). An ALJ may "permissibly reject . . . check-off reports that [do] not contain any explanation of the bases of their conclusions." Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996); see also Thomas, 278 F.3d at 957 (ALJ "need not accept [a medical] opinion [that] is brief, conclusory, and inadequately supported by clinical findings"). More weight is also afforded "to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001) (citations omitted). Further, "[a]n opinion of disability premised to a large extent upon the claimant's own accounts of [her] symptoms and limitations may be disregarded, once those complaints have themselves been properly discounted." Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).

An independent review of the record confirms that the assessments of Ms. Bird, Ms. Kosmetatos, and Mr. Bender failed to take into consideration plaintiff's substance abuse. See Tr. 359-83, 438, 447, 473-569; see also Tr. 637 (plaintiff admitting in January 2012 that she previously discontinued counseling "because she was using meth and did not want to share this with her counselor"); Savage v. Comm'r of Soc. Sec. Admin., 158 Fed.Appx. 924, 925 (9th Cir. 2005) (affirming the ALJ's decision under analogous circumstances). Ms. Kosmetatos's and Mr. Bender's reports are also conclusory, not accompanied by reference to any objective findings, and reflect plaintiff's uncredible subjective statements. Tr. 431-38, 440-47. Lastly, Ms. Kosmetatos and Mr. Bender both provide opinions outside of their respective areas of expertise.

Page 11 - OPINION AND ORDER

Conversely, Drs. Harris and Cole each independently examined plaintiff after she stopped abusing substances and concluded that she was capable of working with limitations consistent with those outlined in the RFC. Tr. 601-25. On appeal, plaintiff neither challenges the ALJ's negative credibility finding nor the weight afforded to the opinions of Drs. Cole and Harris. See generally Pl.'s Opening Br.; Pl.'s Reply Br. Therefore, the ALJ's evaluation of Ms. Bird's, Ms. Kosmetatos's, and Mr. Bender's reports is affirmed.[2]

## II.  Lay Witness Testimony

Plaintiff next asserts that the ALJ neglected to provide germane reasons to reject the lay testimony. As noted above, lay testimony regarding a claimant's symptoms or how an impairment affects the ability to work is competent evidence that an ALJ must take into account. Molina, 674 F.3d at 1114 (citation omitted). The ALJ must provide a germane reason in order to reject such testimony. Id. (citation and internal quotation omitted).

The record contains lay witness statements from four individuals: Tammy Turpin, Tiffany Miller, Ms. Tharp-Britt, and Mr. Tucker. In January 2010, Ms. Turpin, plaintiff's cousin, provided a Third-Party Adult Function Report. Tr. 224-31. Ms. Turpin stated

---

[2] Alternatively, plaintiff argues that the ALJ neglected to adequately develop the medical record. The claimant bears the burden of proving the existence or extent of an impairment, such that the ALJ's limited "duty to further develop the record is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001).I find those circumstances do not exist here.

that plaintiff engaged in "basic indoor cleaning," limited cooking, and shopping, as well as cared for her two children, watched television, read, and went "camping, fishing, [and] horseback riding . . . a couple times a year." Tr. 225-28. Ms. Turpin also reported that plaintiff was independent in her self-care. Tr. 225. She nonetheless explained that plaintiff "hurts too bad or is always tired," "has a hard time functioning," and does not do well in social situations because she "gets too tired [and] is easily irritated." Tr. 224, 226, 228.

In August 2011, Ms. Miller, plaintiff's teenage daughter, completed a "Witness Statement" prepared by plaintiff's attorney. Tr. 290-97. Ms. Miller reported that plaintiff was moderately impaired in her activities of daily living, markedly impaired in social functioning, and moderately impaired in concentration, persistence, or pace. Tr. 290-92. She checked boxes indicating that plaintiff had "[r]epeated episodes of decompensation, each of extended duration," "[a] residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate," a "[c]urrent history of 1 or more years' inability to function outside a highly supportive living arrangement with an indication of continued need for such an arrangement," and a "[c]omplete inability to function independently outside of the area of one's home." Tr. 294. In addition, in regard to a question concerning abnormal behaviors, Ms. Miller remarked

Page 13 - OPINION AND ORDER

that plaintiff "is a whack job cause you never know what is going to come out of her." Tr. 296.

Ms. Tharp-Britt, plaintiff's friend, also furnished a "Witness Statement" in August 2011. Tr. 284-89. Ms. Tharp-Britt explained that plaintiff was markedly impaired in her activities of daily living, extremely impaired in social functioning, and markedly impaired in concentration, persistence, or pace. Tr. 284-86. She checked boxes reflecting that plaintiff had "[r]epeated episodes of decompensation, each of extended duration," "[a] residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate," a "[c]urrent history of 1 or more years' inability to function outside a highly supportive living arrangement with an indication of continued need for such an arrangement," and a "[c]omplete inability to function independently outside of the area of one's home." Tr. 288.

That same month, Ms. Tharp-Britt testified at plaintiff's first ALJ hearing. Tr. 66-84. Ms. Tharp-Britt initially stated that she had known plaintiff since 2008 and described them as "best friend[s]" who saw each other frequently. Tr. 67-68. According to Ms. Tharp-Britt, "approximately six months after [they] met," she noticed that plaintiff's health was declining, to the point where plaintiff was extremely tired, self-isolating, and incontinent. Tr. 69-74, 83. After subsequent questioning from the ALJ, however, it became clear that Ms. Tharp-Britt did not meet plaintiff until at

Page 14 - OPINION AND ORDER

least September 2009, after plaintiff had begun heavy drug use. Tr. 75-77. It was further revealed that plaintiff and Ms. Tharp-Britt did not see each other regularly until a few months prior to the hearing, as they lived in different cities. Tr. 78-83.

In April 2012, Mr. Tucker, plaintiff's boyfriend, testified at the second ALJ hearing. Tr. 39-52. He stated that plaintiff slept most of the day and has pain in her neck, back, and shoulders. Tr. 41, 43. Mr. Tucker reported that plaintiff "sometimes struggles lifting a gallon of milk," could only stand for 20 minutes and walk for 30 yards before needing to rest, "get[s] irritable easily," and has a poor memory. Tr. 43-47. Nevertheless, he explained that plaintiff was capable of cooking a full meal and socializing with her friends and grandmother outside of the home "a couple of times a month." Tr. 44, 49.

After accurately summarizing the testimony of Ms. Turpin, Ms. Miller, Ms. Tharp-Britt, and Mr. Tucker, the ALJ found that, "[i]n as much as these witness[es] are simply reporting their observations of the behavior of [plaintiff], these statements are generally found credible; however these observations are considered with great caution as these witness[es] possess neither the expertise nor the motivation to offer an objective or functional assessment, and their opinions appear to be colored by affection for [plaintiff]." Tr. 24-25. The ALJ discredited this evidence because, "more importantly, the impression of the witnesses is based in large part on the credibility of [plaintiff] which is

demonstrably poor based on the entire record, including the recent two consultive examinations." Tr. 25.

An ALJ "may reject lay testimony predicated upon reports of a claimant properly found not credible." Boyce v. Astrue, 2012 WL 4210628, *9 (D.Or. Sept. 19, 2012) (citing Molina, 674 F.3d at 1114; Valentine v. Astrue, 574 F.3d 685, 694 (9th Cir. 2009)). Inconsistency with the medical evidence is also an acceptable reason for rejecting third-party statements. Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005). Moreover, nothing precludes an ALJ from considering the close relationship between a lay witness and a claimant when evaluating credibility. Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006).

To the extent the ALJ discredited evidence from Ms. Turpin, Ms. Miller, Ms. Tharp-Britt, and Mr. Tucker because it was based on plaintiff's uncredible self-reports and contrary to the objective medical record, substantial evidence supports the ALJ's conclusion. As discussed above, all of the medical opinion evidence from plaintiff's treatment providers was rendered while she was abusing substances. The only other opinion evidence in the record comes from Drs. Cole and Harris, as well as the state-agency consulting sources. Dr. Cole, a psychological specialist, found that plaintiff presented an "exaggerated picture [of her] situation and problems." Tr. 608-10. In addition, plaintiff reported a slate of daily activities to Dr. Cole that are inconsistent with the observations of Ms. Turpin, Ms. Miller, Ms. Tharp-Britt, and Mr. Tucker. For instance, plaintiff stated that she brushes her teeth and showers

daily, "washes dishes three times a week," "vacuums twice a week," "sweeps and mops once a week," "does laundry once a month," "cooks three times a week," "drives a car [and] can take a bus," "shops once a week," watches television, and "see[s] her friends once a week." Tr. 604-05. Dr. Harris opined that, although her test results were within the normal range, plaintiff would need restrictions compatible with those described in the RFC to sustain gainful employment due to "deconditioning [and] symptoms of chronic pain." Tr. 617-20. Likewise, state agency sources Bill Hennings, Ph.D., Joshua Boyd, Psy.D., Neal Berner, M.D., and Martin Kehrli, M.D., reported that plaintiff was capable of performing a limited range of light work. Tr. 409-11, 414-20, 425-26.

This evidence contradicts the lay witnesses's assertions that plaintiff is completely unable to function independently both inside and outside of her home. Furthermore, the record before the Court supports the ALJ's conclusion that the statements of Ms. Turpin, Ms. Miller, Ms. Tharp-Britt, and Mr. Tucker are less reliable because they were based on plaintiff's self-reports. As noted above, the ALJ provided clear and convincing reasons, supported by substantial evidence, to reject plaintiff's credibility, and these reasons are equally applicable to the third party statements. See Molina, 674 F.3d at 1114-22. Thus, the ALJ's decision is upheld as to the lay testimony.

III. RFC Assessment and Step Five Finding

Finally, plaintiff argues that the ALJ's RFC and step five finding are erroneous because they do not account for: (1)

Page 17 - OPINION AND ORDER

limitations articulated by Dr. Cole, to whose opinion the ALJ afforded full weight; and (2) restrictions outlined in the third-party statements, as well as in the medical opinion evidence furnished by Ms. Bird, Ms. Kosmetatos, and Mr. Bender.

The RFC is the maximum a claimant can do despite her limitations. See 20 C.F.R. § 416.945. In determining the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe, and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. SSR 96-8p, available at 1996 WL 374184. Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. Osenbrock v. Apfel, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

A.    Restrictions Assessed by Dr. Cole

As addressed throughout, Dr. Cole evaluated plaintiff's mental impairments in January 2012 at the request of the ALJ. Tr. 601-15. Dr. Cole's assessment was based on plaintiff's medical records, several neuropsychological tests, and a clinical interview. Tr. 601. The doctor diagnosed plaintiff with major depression, anxiety, a history of amphetamine and cannabis dependence, and a pain disorder associated with psychological factors and a general medical condition. Tr. 609. He also indicated the possibility of a personality disorder, "however, further assessment in this area is suggested to determine the appropriateness of this diagnosis." Tr. 609-10. In his narrative report, Dr. Cole noted some inconsistent test results and plaintiff's exaggerated responses; although he did

Page 18 - OPINION AND ORDER

not affirmatively find that she was a malingerer, he did question whether plaintiff gave a full and honest effort during the exam. Tr. 608-10. While he did not formally diagnose her as such, he also noted that plaintiff's "intense hypochondriacal problems" were "most likely" consistent with a somatoform disorder.[3] Tr. 608-09.

Regarding functional limitations, the doctor reported that plaintiff had low-average intelligence, "[m]ild problems in the areas of attention and concentration," "moderate problems with regard to her ability to maintain and alternate smoothly between parallel mental tasks," and "mildly deficient memory capabilities." Tr. 610. Accordingly, Dr. Cole reported that plaintiff "was able to sustain simple routine tasks, and [had] no problems completing a simple multiple-step task." Id. In sum, Dr. Cole opined that plaintiff's "claimed problems with pain, and the level of anxiety/problems interacting with others, would be the primary factors, which would impact her overall vocational success." Id. On the accompanying mental RFC form, Dr. Cole checked boxes reflecting that plaintiff had moderate impairment in her "ability to make judgments on complex work-related decisions" and in interacting appropriately with the public, supervisors, and coworkers. Tr. 612-13.

---

[3] To the extent that plaintiff asserts that the ALJ's RFC was erroneous because it failed to account for her somatoform disorder, her argument is unavailing. The only reference in the 643 page record to a somatoform disorder is in Dr. Cole's report. Yet, as noted above, Dr. Cole did not, in fact, diagnose plaintiff with a somatoform disorder. Thus, as the ALJ properly determined at step two, plaintiff's alleged somatoform disorder does not qualify as a medically determinable severe impairment. Tr. 20.

Page 19 - OPINION AND ORDER

The ALJ gave "great weight" to Dr. Cole's assessment. Tr. 24. As such, the RFC includes non-exertional limitations for simple, routine work and no public contact. Tr. 21. Although her argument is somewhat difficult to decipher, plaintiff asserts that, because Dr. Cole found that she was moderately impaired in social functioning, the ALJ's RFC, which only limits her contact with the public, is deficient. See Pl.'s opening Br. 30; see also Pl.'s Reply Br. 1-5. It is well-established, however, that "the term 'moderate' does not necessarily indicate a degree of limitation that must be expressly reflected in the RFC assessment because it does not inherently translate to a concrete functional limitation." Davis, 2014 WL 2611346 at *9 (citation and internal quotations and brackets omitted). Rather, "the dispositive inquiry is whether the ALJ's RFC assessment is supported by substantial evidence." Id. (citations and internal quotations omitted). In other words, the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008).

Here, the evidence of record supports the ALJ's non-exertional limitation regarding social functioning. Notably, the record reveals that plaintiff gets "along well with her coworkers[,] supervisor[s]," and authority figures; socializes with friends and family several times a month; lives with her boyfriend, with whom she has maintained a relationship for several years; and attends group meetings to help maintain her sobriety. Tr. 40, 48-49, 245,

368, 602, 605. In light of this evidence, including plaintiff's self-reports, the ALJ reasonably concluded that she is capable of interacting appropriately with coworkers and supervisors, but not the general public. See Bagby v. Astrue, 2012 WL 1114298, *10 (D.Or. Feb. 7), adopted by 2012 WL 1114288 (D.Or. Apr. 3, 2012) (ALJ's RFC was not erroneous where it omitted an examining doctor's assessed limitation in interacting appropriately with supervisors because, by the claimant's "own admission[,] she has no greater difficulty getting along with supervisors than anyone else").

In addition, Dr. Cole's report regarding social functioning is inconsistent with the opinions of the state agency consulting sources; Drs. Hennings and Boyd both assessed plaintiff as being mildly limited in social functioning, albeit while abusing substances, and neither found that she was significantly limited by her mental impairments. Tr. 409-11, 425. Moreover, while not dispositive, the Court observes that the jobs identified by the VE are unskilled, which "ordinarily involve dealing primarily with objects, rather than data or people." SSR 85-15, available at 1985 WL 56857; Tr. 52-58; see also Oliver v. Comm'r of Soc. Sec. Admin., 548 Fed.Appx. 470, 470-71 (9th Cir. 2013) (ALJ did not commit reversible error in failing to include functional limitations assessed by Dr. Jensen in the RFC where "[n]either occupation [identified by the VE] require[d] any of the physical demands or environmental conditions implicated by Dr. Jensen's assessment").

The Court finds that the ALJ's RFC, for no public contact, sufficiently accounts for plaintiff's moderate impairment in social

functioning and is not inconsistent with Dr. Cole's report. Even assuming, however, that the ALJ erred in rejecting certain facets of Dr. Cole's opinion, such an error was harmless in light of the other substantial evidence of record reflecting that plaintiff is capable of interacting appropriately with coworkers and supervisors. See Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055-56 (9th Cir. 2006) (errors by ALJ that are "nonprejudicial" or otherwise "inconsequential to the ultimate nondisability determination" are harmless). The ALJ's decision is affirmed as to this issue.

    B.   Restrictions Outlined in the Lay Statements

As discussed above, the statements of Ms. Turpin, Ms. Miller, Ms. Tharp-Britt, Mr. Tucker, Ms. Bird, Ms. Kosmetatos, and Mr. Bender were properly discredited by the ALJ. Further, the opinions of Dr. Cole and Dr. Harris, as well as those of the consulting state-agency doctors, indicate that plaintiff is capable of performing a limited range of light exertion work. Accordingly, plaintiff's argument, which is contingent upon a finding of harmful error in regard to the aforementioned issues, is without merit. Bayliss v. Barnhart, 427 F.3d 1211, 1217-18 (9th Cir. 2005). Accordingly, the ALJ's RFC and step five finding are upheld.

**CONCLUSION**

For the foregoing reasons, the Commissioner's decision is AFFIRMED and this case is DISMISSED.

functioning and is not inconsistent with Dr. Cole's report. Even assuming, however, that the ALJ erred in rejecting certain facets of Dr. Cole's opinion, such an error was harmless in light of the other substantial evidence of record reflecting that plaintiff is capable of interacting appropriately with coworkers and supervisors. See Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055-56 (9th Cir. 2006) (errors by ALJ that are "nonprejudicial" or otherwise "inconsequential to the ultimate nondisability determination" are harmless). The ALJ's decision is affirmed as to this issue.

    B.   <u>Restrictions Outlined in the Lay Statements</u>

As discussed above, the statements of Ms. Turpin, Ms. Miller, Ms. Tharp-Britt, Mr. Tucker, Ms. Bird, Ms. Kosmetatos, and Mr. Bender were properly discredited by the ALJ. Further, the opinions of Dr. Cole and Dr. Harris, as well as those of the consulting state-agency doctors, indicate that plaintiff is capable of performing a limited range of light exertion work. Accordingly, plaintiff's argument, which is contingent upon a finding of harmful error in regard to the aforementioned issues, is without merit. <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1217-18 (9th Cir. 2005). Accordingly, the ALJ's RFC and step five finding are upheld.

**CONCLUSION**

For the foregoing reasons, the Commissioner's decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

Dated this _30th_ day of July 2014.


_____
                Ann Aiken
    United States District Judge